Fee Paid
Receipt #: 150011306

F I L E D

JUL 1 9 2024

CLERK'S OFFICE
DETROIT

**United States District Court**

**Eastern District of Michigan**

**Southern Division**

| | |
|---|---|
| VINAY SAINI, an individual,<br><br>　　*Plaintiff,*<br><br>v.<br><br>SHERIDAN COMMUNITY HOSPITAL, a<br>Michigan Domestic Corporation and its<br>BOARD OF DIRECTORS and AGENTS;<br><br>LILI PETRICEVIC, an individual; and<br><br>JOHN and JANE DOE(s).<br><br>　　*Defendants.* | Case No.<br><br>Case: 2:24-cv-11871<br>Assigned To : McMillion, Brandy R.<br>Referral Judge: Stafford, Elizabeth A.<br>Assign. Date : 7/19/2024<br>Description: CMP- VINAY SAINI V.<br>SHERIDAN COMMUNITY<br>HOSPITAL ET AL. (CMS) |

## **Complaint and Jury Demand**

Plaintiff Vinay Saini, *pro se*, states his complaint against Defendants as follows:

### **Nature of the Action**

1.  This is an employment discrimination action brought under Title VII of the Civil Rights

    Act of 1964, Americans with Disabilities Act of 1990, 42 U.S.C. 1981, and Michigan's

    Elliott-Larsen Civil Rights Act (ELCRA, MCL 37.2101 *et seq*) and Persons with

    Disabilities Civil Rights Act (PDCRA, MCL 37.1101 *et seq*) for Defendants' unlawful

    discrimination on account of Plaintiff's age, race, color, ethnicity, national origin,

    alienage, perceived disability, and protected activity.

2.  Plaintiff also brings an action for wrongful discharge under Michigan's Whistleblowers'

    Protection Act (WPA, MCL 15.361 *et seq*) for Defendants' threat to terminate

    employment for Plaintiff's report(s) of suspected violations of law(s) to a public body.

3.  Plaintiff also brings tort claims arising under the same set of facts.

**Jurisdiction and Venue**

4.  Plaintiff is domiciled in Michigan and a resident of Oakland County, Michigan.

5.  Defendant Sheridan Community Hospital is a Michigan domestic nonprofit healthcare corporation and a licensed hospital, and its principal place of business is located at 301 N. Main St, Sheridan, MI 48884.

6.  Defendant Petricevic is the Chief Executive Officer (CEO) of Sheridan Community Hospital.

7.  Defendant(s) John and Jane Doe(s) are either employees and/or agents of Sheridan Community Hospital or entities and/or individuals who communicated with Defendants on issue(s) pertinent to this dispute.

8.  Jurisdiction is proper in this court under 28 U.S.C. 1331, 1343a(3) and (4), and 1367.

9.  Venue is proper in this court under 42 U.S.C. 2000e-5(f)(3), 28 U.S.C. 1391(b), MCL 15.363(2), MCL 37.1606(2), MCL 37.2801(2), and MCL 600.1627.

10. Plaintiff filed a charge with EEOC within 300 days of the commission of the unlawful employment practices alleged in this claim.

**Background facts**

11. Plaintiff, Vinay Saini ("Dr. Saini") is a medical doctor licensed to practice Medicine in State of Michigan.

12. Dr. Saini is a national of India, and has Indian race, ethnicity, ancestry, and background. He is a person of color (brown).

13. Defendant Sheridan Community Hospital ("Hospital") is a privately held corporation with more than 160 employees which operates a hospital in Sheridan, MI. It is governed by a board of directors.

2

14. Dr. Saini was employed by Defendant Sheridan Community Hospital at all relevant times.

15. Dr. Saini's duties involved working remotely from his home and/or provide telemedicine services to patients of Hospital as necessary.

16. Petricevic, as an employee and agent of Hospital, was the direct supervisor of Dr. Saini in matters pertaining to his employment.

17. Around July 2023, Dr. Saini relocated from New Mexico to Michigan.

18. Around November 2023, Dr. Saini applied for an open position for the role of primary care physician at Hospital through its public website.

19. Dr. Saini was objectively qualified for this role based on the criteria listed on the job application.

20. On December 11, 2023, Ms. Jessica Myers (HR Assistant) from Hospital reached out to Dr. Saini for scheduling an interview.

21. On December 29, 2023, Petricevic met and interviewed Dr. Saini virtually. She reviewed his CV, professional background, availability, and information concerning his eligibility for this role.

22. During this interview, Petricevic commented on him being "such a young Indian doctor" and whether he anticipated any problems in "shifting from predominantly Hispanic patient base to White population."

23. Dr. Saini is comfortable seeing, and sees, patients of all demographic backgrounds.

24. On January 9, 2024, Ms. Cindy Pena (HR manager) from Hospital reached out to Dr. Saini to schedule a second round of interview for the position.

25. The alleged purpose of the second interview was to test Dr. Saini's "fit" for the community and the Hospital.

26. On January 18, 2024, Dr. Saini was interviewed by a panel of multiple officers and employees of Hospital including Dr. Eva Bartlett (Medical Director of Clinic and Chief Medical Officer), a White female.

27. Dr. Bartlett was the only medical doctor on the interview panel and did not ask Dr. Saini any questions pertinent to his professional background which would bear on his candidacy.

28. Dr. Bartlett informed the interview panel that she would discuss her "impressions" pertaining to Dr. Saini privately with Petricevic.

29. On February 6, 2024, a third round of interview was conducted with a different panel. This panel included Hospital's Board members and some healthcare providers at the Hospital.

30. All members of this panel were White.

31. Dr. Bartlett was not part of this panel.

32. On February 16, 2024, Petricevic and James Dimitriou (Board Member) verbally extended an employment offer on behalf of Hospital to Dr. Saini.

33. Later the same day, Petricevic e-mailed Dr. Saini noting "[Y]our experiences and personality align well with what we're seeking, and we believe you'd be a valuable addition to our team."

34. During his multiple rounds of interviews, no one from Hospital identified anything in Dr. Saini's background which would have rendered him ineligible for the role.

35. On February 17, 2024, Petricevic emailed Dr. Saini a formal employment contract.

36. Petricevic represented to Dr. Saini that the Hospital should be able to get him to start work in less than 30 days once it receives a signed contract.

37. On March 12, 2024, the parties signed the employment contract.

38. The parties agreed on a tentative start date of May 1, 2024.

39. As a condition of employment, Dr. Saini was required to apply for medical staff membership and privileges at the Hospital ("credentialing application," "credentialing").

40. According to Hospital Bylaws, Petricevic had exclusive control over collecting pertinent documents related to credentialing and forwarding it to the Hospital's Credentialing Committee.

41. Throughout the 4 month long interview process, Petricevic repeatedly represented that Dr. Saini's credentialing should be quick and straightforward.

42. Petricevic reached out to Hospital employees; Cindy Pena (HR manager), Lisa Snyder (Credentialing coordinator), and Cynthia Esther (Credentialing onboarding) to "send required credentialing packet and all needed information to Dr. Saini, so he can start this [onboarding] process."

43. The same day (March 12, 2024), Ms. Lisa Snyder reached out to Dr. Saini to complete "required paperwork for onboarding" so that "we can get you approved in April for your start date of May 1."

44. Over the next few weeks, Dr. Saini submitted the requested information including his permanent resident card because he is not a U.S. citizen.

45. On April 5, 2024, Petricevic emailed Dr. Saini a letter noting "The application you submitted has not provided adequate information for us to properly evaluate your education, training, physical and mental health status, experience, background,

demonstrated ability, and current competence, nor does it provide adequate information for us to determine your compliance with applicable laws and requirements of federal and state healthcare programs."

46. Petricevic asked Dr. Saini to withdraw the credentialing application due to allegedly incomplete status of his submission.

47. Petricevic warned that proceeding to the credentialing committee with an incomplete file could result in denial of the request for privileging which would be a reportable event to a federal database (National Practitioner Data Bank, NPDB).

48. According to Hospital Bylaws, the credentialing application could not be forwarded to Credentialing Committee unless it was complete.

49. On April 7, 2024, Dr. Saini emailed Petricevic noting that no unaddressed deficiencies in his application had been brought to his attention and without any specifics on the alleged deficiencies he cannot make an informed decision on her recommended proposal.

50. Dr. Saini clearly expressed his willingness to work with Hospital on this issue to make his application "complete."

51. On April 9, 2024, Petricevic replied noting that she did not intend to give him an opportunity to supplement his application and "I don't expect that you will be approved for privileges at Sheridan Community Hospital…."

52. On April 10, 2024, in an attempt to ascertain the factual bases for Petricevic's statements, Dr. Saini asked for "the list of criteria credentialing committee looks at when deciding whether to grant or deny privileges."

53. Petricevic or Hospital did not make a responsive answer to that request.

54. Hospital Bylaws required credentialing decisions to be objective and evidence based.

55. On April 11, 2024, Dr. Saini opposed "the lack of transparency and fair dealing during the credentialing process."

56. To minimize the harm to his future career and job prospects, he proposed that parties mutually terminate the employment contract thereby rendering any credentialing decisions moot.

57. On April 12, 2024, Hospital sent Dr. Saini a "Mutual Consent to Terminate Employment" letter ("Letter') asking him to waive his legal rights, including those grounded in discrimination laws, in consideration for his requested course of action.

58. Dr. Saini refused to sign the Letter and withdrew his allegedly incomplete application form. He noted, "Despite my good faith attempts to identify any such alleged deficiencies you [Petricevic] refused to discuss them with me."

59. On April 15, 2024, Petricevic acknowledged Dr. Saini's email communication and considered "this your notice of your intent to voluntarily terminate your employment agreement with us."

60. Dr. Saini had no intention to voluntarily terminate his employment agreement with Hospital.

61. On April 25, 2024, Dr. Saini advised Petricevic that he intended to report violations of his federal and state law rights to appropriate forums.

62. On April 29, 2024, Petricevic replied noting that "filing a complaint would defeat the purpose of allowing you to withdraw your application as we would be required to defend our actions and as part of that process we would by necessity disclose the intentional shortcomings that lead us to the conclusion that you would not pass our credentialing process."

63. Dr. Saini is not aware of any intentional shortcomings on his behalf in his credentialing application.

64. Petricevic issued a warning to Dr. Saini that if he refused to voluntarily terminate his employment agreement with Hospital, "we will take a different approach in finalizing the termination of our relationship."

65. Petricevic was clear that Hospital would not hesitate to terminate Dr. Saini's employment "for cause" and it knew that such a termination "would raise issues with other potential employers."

66. Later the same day (April 29, 2024), Dr. Saini replied clarifying that he withdrew his allegedly incomplete credentialing application only because he had "lost faith in [Hospital and its agents] and had reasonable basis to believe that unlawful factors may be lurking behind their actions."

67. Dr. Saini clearly noted that he was coerced, intimidated, and threatened into voluntarily terminating his employment with Hospital.

68. To minimize the harm to his future career and job prospects, Dr. Saini terminated his employment with Hospital without cause upon a 60-day notice.

69. Petricevic accepted Dr. Saini's notice and noted that Hospital "waived the 60-day requirement."

70. On May 6, 2024, Dr. Saini filed a discrimination charge against Hospital with U.S. Department of Justice, Civil Rights Division, alleging violation of 8 U.S.C. 1324b (national origin and citizenship discrimination).

71. On May 8, 2024, Dr. Saini contacted Michigan Department of Civil Rights ("MDCR") to file a charge of discrimination against the Hospital.

8

72. On June 7, 2024, EEOC filed a Charge of discrimination against the Hospital and began its investigation.

**Causes of Action**

**Count I: Discrimination, Retaliation, Harassment, and Constructive Discharge in violation of Title VII of Civil Rights Act of 1964 and Michigan Elliott-Larsen Civil Rights Act (ELCRA).**

73. Plaintiff realleges each and every allegation contained in this Complaint as if fully pled herein.

74. Title VII prohibits any employer with at least 15 employees from discriminating against an applicant or employee because of that person's race, color, religion, sex, or national origin. 42 U.S.C. 2000e(b), 2000e-2(a). Title VII also prohibits employers from retaliating against an employee who opposes suspected or actual violations of the statute. 42 U.S.C. 2000e-3.

75. Like Title VII, the ELCRA also prohibits discrimination against an individual with respect to a term, condition, or privilege of employment based on *inter alia* race, color, national origin, and age. MCL 37.2202(1)(a).

76. Defendant Hospital entered into employment agreement with Dr. Saini.

77. Successfully completing the credentialing at the Hospital was a condition of Dr. Saini's employment.

78. Defendant Petricevic, individually and as an agent of Hospital, exercised significant and exclusive control over the credentialing application process.

79. Defendants John and Jane Doe(s) adversely affected Dr. Saini's ability to successfully complete the credentialing application independently, and with support of Petricevic, in furtherance of unlawful discrimination.

80. Dr. Saini suffered a materially adverse employment action when Defendants intimidated him to withdraw his credentialing application or risk an adverse report to a federal database.

81. Defendants knew that without completing credentialing, Dr. Saini would not be able to start work on May 1, 2024.

82. Defendants willful and wanton conduct denied Dr. Saini a fair opportunity to address the alleged deficiencies in the credentialing application.

83. Dr. Saini had asked for this information which was under Defendants' exclusive control.

84. Defendants only made vague, non-specific assertions alleging the inadequate nature of Dr. Saini's application to meet its credentialing criteria.

85. Defendants did not identify the "who, what, when, where, why, and how" of these credentialing criteria.

86. Dr. Saini was willing to submit an adequate credentialing application had the Defendants identified the factual bases for alleged deficiencies specifically.

87. In absence of any specifics, these criteria were purely subjective and made by decision makers who are not members of a minority group.

88. These criteria are a mere pretext for unlawful discriminatory credentialing practices of Defendants.

89. There are no physicians of minority groups on medical staff at Hospital.

90. Defendants knew and were fully informed of Dr. Saini's education, training, experience, background, demonstrated ability, current competence, and compliance with applicable laws and requirements of federal and state healthcare programs when they made him an employment offer.

91. Dr. Saini's credentials did not materially change between the time he first accepted employment with Hospital and later submitted his credentialing application.

92. Defendants had no reasonable basis to conclude that Dr. Saini's application was inadequate under these criteria.

93. Defendants' decisional process is not worthy of credence and their error in perceiving alleged inadequacies is too obvious to be unintentional.

94. Defendants routinely gave other non-minority healthcare professional(s), opportunity to address alleged deficiencies in their incomplete credentialing application(s).

95. Defendants continued to have a need for someone to do the same job after it prevented Dr. Saini from fulfilling that role.

96. Dr. Saini would have been the only minority physician at the Hospital had he successfully obtained credentialing at the Hospital.

97. Dr. Saini would have been the youngest medical staff member at the Hospital.

98. Defendants intentionally acted to Dr. Saini's disadvantage due to his membership in a protected group.

99. Defendants' willful and dishonest actions denied Dr. Saini an opportunity to earn wages, benefits, and other tangible benefits of employment.

100.    On April 25, 2024, Dr. Saini expressed his opposition to Defendants conduct which he reasonably and in good-faith believed to be unlawful.

101.    After Dr. Saini withdrew his allegedly incomplete credentialing application, Defendants forced him to voluntarily terminate his employment with the Hospital.

102.    Defendants' threat and coercion to terminate his employment with Hospital was only made after his protected lawful opposition.

103.    Defendants had knowledge of an intent on part of Dr. Saini to file a complaint about suspected violations of the law.

104.    Defendants were willing to terminate the employment agreement without cause provided Dr. Saini waived all legal claims against the Hospital and its agents.

105.    Defendants had extended Dr. Saini an option of the Hospital terminating the employment agreement without cause.

106.    Defendants would not have threatened to terminate Dr. Saini's employment for cause absent this retaliatory motive.

107.    Dr. Saini was constructively discharged by the Defendants because they threatened him with an adverse reference to his future employers if he decided to not act otherwise.

108.    Defendants forced him to resign rather than giving him a legitimate choice of retaining his employment and submitting an adequate credentialing application at a later date.

109.    Defendants' material threat of taking an adverse action against Dr. Saini was at least a motivating factor in its unlawful conduct.

110.    A causal connection exists between Dr. Saini's protected opposition and the adverse employment action.

111.    Defendants' threat came within just 4 days of the knowledge of Dr. Saini's protected activity.

112.    A threat of adverse recommendation to future employers well might have dissuaded reasonable workers from engaging in protected opposition to unlawful discrimination.

113.    Other individuals who did not engage in protected activity were treated in a favorable manner and were not coerced to voluntarily terminate their employment with the Hospital.

114.    Defendants' reasons for its actions had no basis in fact, did not actually motivate its conduct, were insufficient to warrant the conduct.

## Count II: Discrimination, Retaliation, Harassment, and Constructive Discharge in violation of American with Disabilities Act of 1990 and Michigan Persons with Disabilities Civil Rights Act (PDCRA).

115.    Plaintiff realleges each and every allegation contained in this Complaint as if fully pled herein.

116.    The Americans with Disabilities Act of 1990, as amended in 2008, prohibits discrimination and retaliation against a qualified individual on the basis of disability in all aspects of employment. 42 U.S.C. 12112(a), 12203(a). Under ADA, an individual is considered disabled if "regarded as" being disabled whether or not the impairment limits or is perceived to limit a major life activity.

117.    Like ADA, PDCRA makes it illegal for an employer to discriminate against an individual because of a disability that is unrelated to the individual's ability to perform the particular job or position. MCL 37.1202(1)(a).

13

118.     Both ADA and PDCRA prohibit retaliation, interference, coercion and

intimidation against an individual who has sought to exercise rights under the ADA and

PCDCRA. MCL37.1602, 42 U.S.C. 12203.

119.     Defendants are covered employers under ADA and PDCRA.

120.     Defendants regarded Dr. Saini as having a substantially limiting impairment when

they found his credentialing application inadequate because of his physical and mental

health status.

121.     Defendants perceived this limitation to be permanent and severe enough to find

his credentialing application inadequate.

122.     Dr. Saini was otherwise qualified for the position despite his nonexistent

impairments.

123.     Dr. Saini's alleged disability did not prevent him in performing the duties of the

job and was unrelated to the job.

124.     Defendants took an adverse employment action against Dr. Saini by coercing him

to withdraw his allegedly inadequate application or risk an adverse report to federal

database harming his reputation.

125.     Defendants willfully refused to provide any factual bases for its belief of Dr.

Saini's disability.

126.     Defendants did not give Dr. Saini a fair opportunity to address the perceived

disability and/or provide any material documentation.

127.     By denying him this opportunity, Defendants perceived his impairment to be not

amenable to any accommodation and correction.

128.    Defendants never did an individualized inquiry into Dr. Saini's actual medical
condition to see whether he may perform the essential functions of his role.

129.    Defendants denied Dr. Saini an employment opportunity because of the perceived
disability because he could not complete credentialing at the Hospital.

130.    Dr. Saini was willing to submit a complete and adequate application if only the
Defendants would identify the manner in which his credentialing application was
incomplete or inadequate.

131.    Dr. Saini suffered another adverse employment action when the Defendants
intimidated him to end his employment with Hospital or risk an adverse recommendation
to future employers.

132.    Dr. Saini did not intend to terminate his employment with Hospital and opposed
Defendants unlawful conduct.

133.    Dr. Saini's reasonable, good faith belief that Defendants' actions were unlawful
was a significant factor in his constructive discharge.

134.    Dr. Saini's constructive discharge resulted from disability-based harassment.

135.    Defendants use standards that serve to perpetuate the discriminatory impulses of
its agents and others.

136.    Defendants used standards and criteria inconsistent with business necessity that
tend to exclude qualified individuals.

## Count III: Discrimination, Retaliation, Harassment, and Constructive Discharge in violation of 42 U.S.C. 1981.

137.    Plaintiff realleges each and every allegation contained in this Complaint as if fully
pled herein.

138.    Section 1981 affords a federal remedy against discrimination in private

employment which impairs a contractual relationship based on race and color.

139.    Section 1981 claims, generally, follow the contours of Tile VII. In addition, it

prohibits discrimination against noncitizens.

140.    Dr. Saini is a permanent resident of U.S., but not a U.S. citizen.

141.    Dr. Saini first disclosed his alienage and citizenship status, as required, during his

credentialing application.

142.    When Defendants became aware of this information, they unlawfully

discriminated against him by finding his application "incomplete."

143.    Defendants willfully interfered with Dr. Saini's right to enjoy all benefits, terms

and condition of contractual relationship with Hospital.

144.    Defendants violated Dr. Saini's right to submit a complete credentialing

application and successfully complete credentialing as a condition of employment at

Hospital.

145.    Defendants willfully interfered with his right to employment by threatening to

report him to a federal database if he did not act withdraw his allegedly incomplete

application.

146.    Defendants were aware of Dr. Saini's opposition to their unlawful conduct.

147.    Defendants intimidated and threatened Dr. Saini to terminate his employment

without cause or risk an adverse termination and reference to his future employers.

148.    Defendants' actions were causally and temporally related to Dr. Saini's protected

activity.

16

## Count IV: Retaliation and wrongful discharge in violation of Michigan's Whistleblower Protection Act (WPA).

149.     Plaintiff realleges each and every allegation contained in this Complaint as if fully pled herein.

150.     WPA, MCL 15.361 *et seq*, protects employees who are about to report a violation or suspected violation of state or federal law to a public body.

151.     Federal agencies, like EEOC and DOJ, are considered a public body under the "law enforcement agency" section of the WPA's definition of a public body.

152.     Dr. Saini engaged in protected activity on April 25, 2024, when he informed Petricevic that he was about to report Defendants' suspected violations of laws.

153.     Dr. Saini made a complaint with at least three different agencies classified as "public body" under WPA shortly thereafter.

154.     Defendants threatened to terminate Dr. Saini's employment for "cause" and report such termination to future employers if he chose to file such complaints.

155.     Defendants coerced Dr. Saini to terminate his employment voluntarily and discriminated against him to exercise his right of equal employment by their actions.

156.     The threats and subsequent intimidation to terminate his employment were materially adverse employment actions.

157.     Dr. Saini's protected activity was a principal if not the sole reason for the end of his employment because the Hospital had indicted its willingness to terminate his employment without cause provided he waived his legal rights.

158.     Defendants did not switch their position until they realized that Dr. Saini intended to file a complaint regarding his mistreatment.

159.     Dr. Saini's intent to report the alleged mistreatment influenced Defendants' decision.

160.     Defendants threat to "take a different approach to termination to protect from any groundless complaints" Dr. Saini may file, after they knew about his protected activity, was the more likely discriminatory reason motivating its actions and deliberately made to intimidate him.

## Count V: Fraud and misrepresentation

161.     Plaintiff realleges each and every allegation contained in this Complaint as if fully pled herein.

162.     On February 14, 2024, Petricevic made a factual statement to Dr. Saini that his credentialing at Hospital should be quick and straightforward.

163.     Petricevic made this statement relying on information regarding Hospital's credentialing decisions available to her as Hospital's CEO to which Dr. Saini had no access.

164.     Petricevic knew her representation to be false and made it recklessly because she did not control the credentialing decisions at the Hospital.

165.     Petricevic intended for Dr. Saini to rely on the representation to sign the employment agreement with the Hospital.

166.     In relying on this statement, Dr. Saini forego other employment opportunities.

167.     Dr. Saini would not have entered into contract with Hospital had he known that Petricevic's representation was false.

168.     Petricevic's false representation further damaged Dr. Saini because he eventually had to withdraw his allegedly incomplete credentialing application.

169.    Defendants knew of the factual bases for deeming Dr. Saini's credentialing application incomplete on April 5, 2024.

170.    Defendants took it upon them to make a representation about the alleged inadequacy of his application.

171.    Defendants knew that under Hospital Bylaws an incomplete credentialing application cannot be acted upon by Credentialing Committee and therefore cannot be denied.

172.    Defendants knew that under Hospital Bylaws if the Credentialing Committee had any questions on an application it was required to obtain more information from the applicant.

173.    Defendants' representation that Dr. Saini's incomplete application would be denied and such a denial would be reportable to federal database was false and made in bad-faith.

174.    Dr. Saini acted reasonably when he attempted to learn the factual bases for Defendants statements.

175.    Defendants had an obligation to disclose the factual bases for its statements because of the Hospital Bylaws and the customs of the credentialing process.

176.    Defendants willfully withheld this information from Dr. Saini and knew that its actions would create a false impression on him.

177.    Defendants intended for Dr. Saini to rely on these misrepresentations to encourage him to withdraw his application.

178.    Dr. Saini reasonably relied on these misrepresentations when he withdrew his allegedly incomplete application.

19

179.     Without completing the credentialing process, Dr. Saini could not commence his duties on May 1, 2024.

180.     Defendants' representation on April 29, 2024, after Dr. Saini had brought to its attention his unlawful mistreatment, that such inadequacies were intentional on his behalf was false and made recklessly without knowing truth.

181.     Defendants did not explain how they knew the truth of Dr. Saini's intentions.

182.     Dr. Saini did not make any intentional shortcomings in his credentialing application.

183.     Defendants fraudulently induced Dr. Saini to terminate his employment with Hospital or risk an adverse termination for cause.

184.     Defendants knew that they could not terminate Dr. Saini's employment but for "just cause" under the terms of the employment agreement.

185.     Defendants' representation that should Dr. Saini choose not to end his employment with Hospital voluntarily, they would terminate his employment for cause was false or asserted recklessly as it could not be reasonably viewed as "just" under the circumstances.

186.     Defendants' misrepresentations constituted an inducement or motive to act to end his employment with Hospital and misled Dr. Saini.

187.     Dr. Saini suffered an injury when he withdrew his allegedly "incomplete" application and terminated his employment without cause despite his mistreatment by Defendants.

188.     Dr. Saini's loss benefited the Defendants as they escaped liability under contract laws and successfully effected their discriminatory intentions.

### Count VI: Intentional infliction of emotional distress

189.    Plaintiff realleges each and every allegation contained in this Complaint as if fully
pled herein.

190.    Defendants conduct in inducing Dr. Saini to enter into employment agreement
with Hospital, misrepresenting the status of his credentialing application, threatening to
adversely impact his reputation and career, and coercing him to terminate his
employment after he opposed his mistreatment was extreme and outrageous.

191.    Defendants intended to cause severe emotional distress or acted with reckless
disregard as to whether Dr. Saini would suffer severe distress from its conduct.

192.    Defendants were aware that Dr. Saini had committed significant time and effort
over 6 months in pursuing this employment and was looking forward to work at the
Hospital.

193.    Defendants were aware of Dr. Saini's severe distress when he was coerced into
withdrawing his credentialing application and later terminate his employment without
cause as he reasonably believed and communicated to them that such actions may harm
his future reputation and career prospects.

194.    Defendants forced Dr. Saini to choose the lesser of the two evils; either risk
adverse reports to federal database and future employers or do as they wanted.

195.    Dr. Saini suffered severe anxiety, hopelessness, insomnia, and feelings of
isolation and worthlessness as a direct consequence of Defendants' conduct.

196.    Dr. Saini had to travel out-of-country to spend time with his family on short
notice to cope with the severe distress intentionally inflicted upon him.

**Count VII: Tortious interference with contract and interference with prospective economic relations.**

197.     Plaintiff realleges each and every allegation contained in this Complaint as if fully pled herein.

198.     Dr. Saini had an employment contract with Hospital at all relevant times.

199.     Dr. Saini had legitimate economic expectancy from successfully getting credentialed at Hospital as credentialing was a condition of his employment.

200.     Defendants Petricevic and John and Jane Doe(s) knew of the contract.

201.     Defendants knew of the Hospital's credentialing requirement for physicians employed by Hospital and that completion of this process created a valid economic expectancy under the circumstances.

202.     Defendants knew that being credentialed at Hospital is a business relationship as a physician cannot practice his/her profession or conduct lawful business at Hospital without it.

203.     Defendants intentionally interfered with the contract, business relationship, and economic expectancy by making false statements about the adequacy of Dr. Saini's application.

204.     Defendants' interference was improper and motivated by unlawful factors and without justification.

205.     Defendants primary purpose in deeming his credentialing application incomplete was to frustrate his employment with Hospital.

206.     Defendants neither told Dr. Saini about the specific nature of the inadequacies nor gave him an opportunity to address them.

22

207.    Defendants' willful actions resulted in Dr. Saini not being able to complete the credentialing process and timely discharge his employment duties.

208.    Defendants acted knowing that their conduct was certain to cause Dr. Saini being unable to begin employment with Hospital on the tentative start date.

209.    Dr. Saini suffered damages because of Defendants' actions.

### Count VIII: Defamation and False Light

210.    Plaintiff realleges each and every allegation contained in this Complaint as if fully pled herein.

211.    Defendants' statement that Dr. Saini credentials were inadequate to meet its credentialing requirements imputes a fundamental deficiency in his professional background and deters others from dealing with him.

212.    The defamatory implications of these statements are materially false.

213.    Defendants statement pertaining to Dr. Saini's "mental health status" and alleged "non-compliance with laws" is false and defamatory *per se*.

214.    Defendants' statements concerning Dr. Saini's education, training, background, experience, competence, and alleged "intentional" shortcomings in his credentialing application are false.

215.    Defendants negligently or with actual malice published these false and defamatory statements to other employees and healthcare professionals at Hospital who had no mutual interest in Dr. Saini's employment with the Hospital.

216.    Defendants failed to exercise reasonable care and competence in obtaining or communicating the information pertaining to Dr. Saini's credentialing application.

217.    Defendants did not even attempt to collect and verify the information in the
credentialing application.

218.    Defendants intend to share such false statements with future employers.

219.    Dr. Saini suffered damages to his professional reputation, his ability to practice
his profession, and his feelings because of Defendants' conduct.

220.    Dr. Saini has no choice but to repeat the defamatory remarks to others when asked
for the reasons of Defendants actions.

221.    It was foreseeable for Defendants that Dr. Saini would be so compelled to
disclose these defamatory statements.

### Count IX: Negligence and Breach of Fiduciary Duty

222.    Plaintiff realleges each and every allegation contained in this Complaint as if fully
pled herein.

223.    Defendant Hospital and its officers are governed by provisions of MCL 550.1310
and are required to discharge their duties with diligence, care, and skill of an ordinarily
prudent person.

224.    Defendants were required to provide Dr. Saini a notice of the specifics of the
alleged deficiencies in his credentialing application of which they had exclusive
knowledge.

225.    Dr. Saini requested this information from Defendants to allow him to submit a
complete credentialing application but they willfully chose to deny him that information.

226.    Defendants, as a licensed Hospital and under the circumstances, were bound in
conscience, good faith and fair dealing, and had a duty to disclose to doctors like Dr.

Saini any shortcomings in their applications, with specificity, to allow them a fair opportunity to correct them.

227.    Defendants' actions were a proximate cause for Dr. Saini withdrawing his allegedly incomplete credentialing application to avoid harming his future employment prospects.

228.    Defendants knew that as a natural consequence of Dr. Saini not being able to complete the credentialing, he could not continue his employment with Hospital.

229.    Defendant Petricevic, as Hospital's CEO, Dr. Saini's supervisor, and one having exclusive control over determining the status of completion of his credentialing application, was in a position of influence and abused it by her reckless actions.

230.    Dr. Saini reposed trust and confidence in Petricevic relying upon her supervisory role and personal knowledge of Hospital's operations including credentialing.

231.    Petricevic betrayed Dr. Saini's confidence and her fiduciary duty to him under the circumstances.

232.    Dr. Saini suffered damages when he relied upon Petricevic's representation that his credentialing application was incomplete and he would not be approved for privileges at Hospital.

233.    Petricevic failed to disclose the specifics of the alleged "intentional" shortcomings in his credentialing application despite having knowledge of that information.

**Relief Requested**

234.    Plaintiff re-alleges and incorporates each and every allegation contained in all preceding paragraphs.

235.    Defendants' unlawful actions caused injury and damage to Dr. Saini.

236.    Plaintiff request relief from this court against Defendants as follows;

1.  An injunction prohibiting any further acts of discrimination and/or retaliation,

2.  An order awarding economic damages, including back pay, lost retirement benefits, and lost future compensation in an amount to be determined at trial,

3.  An order awarding compensatory and exemplary damages, including damages for mental anguish, loss of enjoyment of life, and loss of reputation and esteem in the community in an amount to be determined at trial,

4.  An order awarding punitive damages in an amount to be determined at trial,

5.  An order awarding attorney fees, costs of litigation, and interest in an amount to be determined at trial,

6.  Any further relief that is just and equitable under the circumstances.


Respectfully submitted,


Vinay Saini

Plaintiff (*Pro se*)

316 Jeffrey Avenue, Royal Oak, MI 48073

vny.saini@gmail.com


Dated: July 19, 2024

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
Vinay Saini

**DEFENDANTS** Shendan Community Hospital et al

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Pro se

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|                                          | PTF | DEF |                                                              | PTF | DEF |
|------------------------------------------|-----|-----|--------------------------------------------------------------|-----|-----|
| Citizen of This State                    | [x] 1 | [x] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State                 | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country  | [ ] 3 | [ ] 3 | Foreign Nation                                             | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                                          Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | | [ ] 370 Other Fraud | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| | | | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [x] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
Title VII, 1981
Brief description of cause: Employment discrimination

**VII. REQUESTED IN COMPLAINT:**
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:  [x] Yes  [ ] No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
July 19, 2024

SIGNATURE OF ATTORNEY OF RECORD
Vinay Saini

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# PURSUANT TO LOCAL RULE 83.11

1.          Is this a case that has been previously dismissed?              ☐ Yes
                                                                             ☒ No

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____


2.          Other than stated above, are there any pending or previously
            discontinued or dismissed companion cases in this or any other      ☐ Yes
            court, including state court? (Companion cases are matters in which  ☒ No
            it appears substantially similar evidence will be offered or the same
            or related parties are present and the cases arise out of the same
            transaction or occurrence.)

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____


Notes : _____